KATHRIAN L. KERN, Respondent, *v.* THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, Appellant.

First Department, May 2, 1924.

Negligence — action to recover for injuries suffered by plaintiff when she tripped over door sill as she was leaving defendant's store and fell — sill was five-eighths of an inch in height, of ordinary size and shape and not defective — defendant not liable — liability cannot be predicated on absence of platform outside door and level with floor.

The defendant, the owner of a store, was not liable to the plaintiff for injuries that she suffered when she tripped on the door sill as she was leaving defendant's store and fell, since it appears that the door sill was five-eighths of an inch in height and was uniform in size and shape and was not worn or defective in construction.

Liability cannot be predicated on the ground that owing to the absence of a platform outside of the door, the plaintiff's injuries were aggravated, since it is a mere matter of speculation whether or not the plaintiff's injuries would have been less if there had been a platform outside the door and level with the floor of the store.

APPEAL by the defendant, The Great Atlantic and Pacific Tea Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 21st day of February, 1923, upon the verdict of a jury for $20,000, and also from an order entered in said clerk's office on the 20th day of February, 1923, denying the defendant's motion for a new trial made upon the minutes.

*Charles H. O'Connor* [*Joseph F. Murray* of counsel], for the appellant.

*William Dike Reed*, for the respondent.

MARTIN, J.:

Plaintiff recovered a verdict for injuries sustained on May 17, 1919, as she was departing from a grocery store conducted by defendant at No. 2156 Westchester avenue, borough of The Bronx, city of New York. After making some purchases and while on her way to the street, she tripped over the saddle or sill located at the doorway opening to the street. Immediately outside of this entrance door there are three steps leading downward to the sidewalk. They are inside the building line. The saddle or sill, which is five-eighths of an inch high, was on the floor of the store at its outer edge near the steps. It is undisputed that it was of the ordinary shape and size. The main door opened inward. Outside of it was a screen door opening outward. The accident happened between four-thirty and five o'clock in the afternoon.

Plaintiff was accompanied by her daughter, who preceded her out of the store. As plaintiff faced the street, the side of the main door on her left was opened. She was carrying a bundle on her left arm and another smaller one on her right arm. When she reached the doorway she pushed the screen door open with her arm. She says: " As I was going out, I tripped over the saddle, or whatever you call it, and I fell down the incline of the steps. * * * Q. And when you got to the entrance of the store, the front of your right foot caught in the saddle of the door and you fell forward out into the street? A. Yes, sir, struck the saddle of the door. Q. And the front of your right foot struck the saddle of the door and you went forward? A. Yes."

The plaintiff did not take notice of the saddle before she fell. She testified on her direct examination: " There was nothing there that I saw. I was looking ahead to go out. Nothing attracted my attention. * * * Q. Did you look to see whether there was any saddle on this step or not? A. I looked ahead. Q. Did you look down to see where you were? A. I certainly did. Q. And didn't you see this saddle? A. It was even with the floor. I did not see anything there. Q. Did you look down to see what was in front of you? A. I looked ahead of me. Q. Were you looking straight ahead, or did you look down to see anything? A. I naturally walked out and looked ahead, as any one would. Q. And you did not look down to see what was on the floor? A. No, sir."

That day it rained from two-twenty-eight to six-twenty-four P. M., and the afternoon was dark. There was no artificial light burning at the store entrance. Just at the time of the accident there was a thunder-storm and, according to plaintiff, it was dark in the store. Plaintiff's witness, Margaret Shannon, testified that immediately after the accident, from inside the store at the counter, she could see the door plainly and also out into the street. The Daylight Saving Law was in effect at the time, and the sun set at eight-eight P. M. The plaintiff had been dealing at this store for about two months before the accident and had been in the store about three times.

This accident was caused by plaintiff's tripping or stumbling over a saddle or sill, which was similar in form and shape to those in general use. It was but five-eighths of an inch in height and was uniform in size and shape. There is no claim that it was improper in form or construction or that the dimensions were unusual, extraordinary or such as to make it a source of danger. The claim is that a platform or step should have been built on the outside of the door on the same level as the floor inside of it, thus continuing the floor level. The plaintiff conjectures that, if

there had been a platform or step outside of the door and level with the floor inside, she would have been able to save herself from falling, or it would, to some extent, have lessened the severity of her fall and injuries.

It was also argued that in addition to the platform there should have been hand rails. It s not clear how hand rails could have served any useful purpose in this case, for it was shown that plaintiff had both arms employed at the time she fell.

The proximate cause of the accident cannot be found in any defect in or condition of the sill over which this woman tripped. It appears to have been perfect in construction, of a kind universally used and with nothing unusual or extraordinary about it. It was not out of repair, was not shown to have been worn, and there was nothing about it to catch the foot. She simply tripped and in her condition of advanced pregnancy, with bundles on both arms, she was unable to protect herself when falling.

It is also argued that the store should have been lighted at the time. This accident happened about four-thirty P. M. on the seventeenth day of May, when the Daylight Saving Law was in effect. (See Gen. Constr. Law, § 52, as amd. by Laws of 1918, chap. 112; since amd. by Laws of 1921, chap. 70.) Though it was raining at that time, it wou'd be unusual to have lights burning in a store in the city of New York in the month of May at three-thirty o'clock in the afternoon, eastern standard time.

In *Trapp* v. *McClellan* (68 App. Div. 362), a leading case on the question of proximate cause, the Appellate Division of the Second Department said: " In *Pollett* v. *Long* (56 N. Y. 200, 206) the court, per GROVER, J., say: ' The party is liable for the natural and probable consequence of his wrongful act or omission, but not for those which are remote and speculative.' "

In *Insurance Co.* v. *Tweed* (74 U. S. 44) Mr. Justice MILLER said: " If a new force or power has intervened of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote."

In *Hall* v. *N. Y. Telephone Co.* (214 N. Y. 49, 52) the court said: " In order to hold the defendant responsible for the result of this accident it must be found that the accident was the natural and probable consequences of the act of the servant in having left the alcohol upon the highway. The law requires that the injury must so directly result from a wrongful act that, according to common experience and the usual course of events, it might under the particular circumstances have reasonably been expected. (*Jex* v. *Straus*, 122 N. Y. 293.)

" We do not agree that the facts in this case created a condition

First Department, May, 1924.    [Vol. 209

the result of which might under the circumstances have been reasonably expected, and the liability of the defendant in this case it seems to us has been settled in analogous cases adverse to the claim of plaintiff. (*Beetz* v. *City of Brooklyn,* 10 App. Div. 382; *Fitzgerald* v. *Rodgers,* 58 App. Div. 298.) "

If this plaintiff had not tripped on the saddle or sill, there would not have been an accident. Its proximate cause can be found in nothing for which the defendant is responsible.

It might be argued that, though the accident was primarily due to something for which there is no liability, plaintiff's injuries were aggravated because there was no platform or step outside of the door, and that it was for the jury to say whether or not those injuries were the result of the absence of such a platform or step. The jury should not be permitted to guess or speculate on a matter of this kind. There was nothing in the case to warrant such a finding. It was just as probable that this woman would have been as seriously hurt if there had been a platform outside the door.

There were other questions raised with reference to liability and the admission of evidence, but the view we take with reference to the absence of liability renders it unnecessary to discuss them.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL and FINCH, JJ., concur

Judgment and order reversed, with costs, and complaint dismissed, with costs.